**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **TQP DEVELOPMENT, LLC**<br><br>                    Plaintiff,<br><br>    v.<br><br>**AFLAC INCORPORATED, et al.**<br><br>                    Defendants. | **Civil Action No. 2:11-cv-00397-DF-CMC** |

**PLAINTIFF'S RESPONSE TO DEFENDANT INTL FCSTONE INC.'S MOTION**
**TO DIMISS PURSUANT TO RULE 12(B)(2) AND 12(B)(6)**

# TABLE OF CONTENTS

I.    FCSTONE'S RULE 12(B)(2) MOTION SHOULD BE DENIED ...................................... 1

    A.    Legal Principles ............................................................................................... 1

    B.    Facts ................................................................................................................ 3

    C.    TQP Satisfies a Prima Facie Showing of Personal Jurisdiction ............................. 4

        1.    The Websites are Active and in the Very Least Interactive ......................... 4

        2.    FCStone Owns the Accused Website and at the Least Operates the Website Through an Agency Relationship ................................................... 4

    D.    Conclusion ....................................................................................................... 5

II.    FCSTONE'S RULE 12(B)(6) MOTION SHOULD BE DENIED ...................................... 5

    A.    TQP's Complaint Satisfies the Pleading Requirements for a Patent Case ............. 6

    B.    FCStone Uses Hypothetical Facts to Seek Judicial Determination on an Artificially Narrow Issue ................................................................................... 9

    C.    TQP's Allegations Have Already Been Found to be Sufficient on the Artificially Narrow Joint Infringement Issue Raised by FCStone ........................ 10

    D.    Conclusion ...................................................................................................... 11

**TABLE OF AUTHORITIES**

**CASES**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    629 F.3d 1311 (Fed. Cir. 2010) *reh'g en banc granted*,
    419 Fed. Appx. 989 (Fed. Cir. 2001) .................................................................................3

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................................6, 7

*Bluestone Innovations Tex.. L.L.C. v. Formosa Epitaxy Inc.*,
    2011 U.S. Dist. LEXIS 117746 (E.D. Tex. Sept. 12, 2011) .................................................7

*BMC Res., Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) ..........................................................................3, 5, 10, 11

*Burger King Corp. v. Rudzeqicz*,
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 528 (1985) ...........................................................1

*Clear with Computers, LLC v. Hyundai Motor Am.*,
    No. 6:09-CV-479, 2011 U.S. Dist. LEXIS 65315 (E.D. Tex. June 14, 2011) .............3, 5, 9

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*,
    297 F.3d 1343 (Fed. Cir. 2002) ............................................................................................2

*Geotag, Inc. v. Frontier Communs. Corp.*,
    2011 U.S. Dist. LEXIS 104901 (E.D. Tex. Sept. 15, 2011) ........................................2, 3, 4

*Golden Hour Data Sys. v. emsCharts, Inc.*,
    614 F.3d 1367 (Fed. Cir. 2010) .........................................................................................11

*Graphic Controls Corp. v. Utah Medical Products, Inc.*,
    149 F.3d 1382 (Fed. Cir. 1998) ............................................................................................2

*Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 2
    85 F.3d 201 (5th Cir. 1996) ..................................................................................................2

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310, 66 S. Ct. 154, 90 L. Ed 95 (1945) .................................................................1

*Jones v. Bock*,
    549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) .....................................................6

 *McNutt v. Gen. Motors Acceptance Corp.*,
    298 U.S. 178, 56 S. Ct. 780, 80 L. Ed. 1135 (1936) ............................................................2

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007) .......................................................................................7, 9

*Patent Rights Prot. Grp., LLC*,
    603 F.3d 1364 (Fed. Cir. 2010)......................................................................................2

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998)......................................................................................2

*Religious Tech. Ctr. v. Leibreich*,
    339 F.3d 369 (5th Cir. 2003) .........................................................................................2

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) .....................................................................................2, 4

*TQP Dev., LLC v. Ticketmaster Entm't, Inc.*,
    Case No. 09-cv-279 (E.D. Tex. Apr. 29, 2010) ....................................................6, 10, 11

**STATUTES**

35 U.S.C. §287.......................................................................................................................7

Federal Rule of Civil Procedure 8(a)(2) ................................................................................6

Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) ....................................................1, 5, 9, 11

**OTHER**

Tex. Civ. Prac. & Rem. Code Ann. § 17.041 (Vernon 200 et seq.)................................................2

Plaintiff TQP Development, LLC ("TQP") files this Response to Defendant INTL FCStone, Inc.'s ("FCStone") motion to dismiss for: (a) lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2) motion"); and (b) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6) motion").  This Response will address the 12(b)(2) Motion in Section I below, and the 12(b)(6) Motion in Section II below.

I.    FCSTONE'S RULE 12(B)(2) MOTION SHOULD BE DENIED

TQP filed suit against FCStone for infringement of U.S. Patent No. 5,412,730 (the "'730 patent"), which claims a method for transmitting encrypted data.  TQP's allegations asserted that FCStone's various websites, "including… secure.fcstone.com," infringed the '730 patent.  FCStone's motion denies that it has any contacts with the forum state, and states more specifically, that it does not own, operate, or maintain any host servers, including the host server operating the "secure.fcstone.com".  Motion at 3-4.  However, both the fcstone.com and intlfcstone.com websites are clearly marked "© INTL FCStone Inc. 2011" and are registered to INTL FCStone, Inc.  Even assuming arguendo that FCStone does not "own, operate, or maintain any host servers," FCStone directs and controls the operations of the secure.fcstone.com website, through at least its ownership of the website and claim of copyright to the website.  As such, FCStone's motion to dismiss based on lack of personal jurisdiction should be denied.

A.    LEGAL PRINCIPLES

To establish personal jurisdiction over a defendant, a plaintiff must show that: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-320, 66 S. Ct. 154, 90 L. Ed 95 (1945); *Burger King Corp. v. Rudzeqicz*, 471 U.S. 462, 474-77, 105 S. Ct. 2174, 85 L. Ed. 528 (1985).

A federal court may exercise personal jurisdiction over a foreign defendant only if (1) the long-arm statute creates personal jurisdiction over the foreign defendant, and (2) the exercise of personal jurisdiction over that defendant is consistent with the due process guarantees of the U.S.

Constitution. *Patent Rights Prot. Grp., LLC*, 603 F.3d 1364, 1368-69 (Fed. Cir. 2010); and *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996)). The Texas Long Arm Statute extends to the full extent permitted by the Due Process Clause of the U.S. Constitution. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.041 (Vernon 200 et seq.)*; Religious Tech. Ctr. v. Leibreich*, 339 F.3d 369, 373 (5th Cir. 2003). Therefore, the only remaining question is "whether the exercise of personal jurisdiction would violate the Due Process Clause of the U.S. Constitution." *Geotag, Inc. v. Frontier Communs. Corp.*, 2011 U.S. Dist. LEXIS 104901, *9 (E.D. Tex. Sept. 15, 2011) (citing *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998)).

Once challenged on personal jurisdiction, the plaintiff bears the burden of proving the defendant is in fact subject to personal jurisdiction in the forum state. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936). In the absence of discovery, a plaintiff "need only make a *prima facie* showing of jurisdiction." *Geotag*, 2011 U.S. Dist. LEXIS 104901 at *10 (citing *Graphic Controls Corp. v. Utah Medical Products, Inc.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998) ("The district court noted that, because the parties had not conducted discovery on the jurisdictional issue, [the plaintiff] only needed to make a prima facie showing that [the defendant] was subject to personal jurisdiction in New York"); *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002) ("When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing").

Minimum contacts can be shown through operation of an internet site. *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). The Fifth Circuit has laid out three categories of websites: (1) passive websites, those do nothing more than allow the owner to post information; (2) interactive websites, "a site [that] allows for bilateral information exchange with its visitors;" and (3) an active website, "sites whose owners engage in repeated online contacts with forum residents over the internet." *Id.* (*See also*, *Geotag*, 2011 U.S. Dist. LEXIS 104901 at *14-16).

2

Even if a Defendant does not directly own or operate the website in question, minimum contacts (as with infringement) can be established through the direction and control of the content and information being delivered through the website. *See Clear with Computers, LLC v. Hyundai Motor Am.*, No. 6:09-CV-479, 2011 U.S. Dist. LEXIS 65315, at *10-14 (E.D. Tex. June 14, 2011); *see also Geotag*, 2011 U.S. Dist. LEXIS 104901 at *13-14; *and Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311, 1319 (Fed. Cir. 2010) *reh'g en banc granted*, 419 Fed. Appx. 989 (Fed. Cir. 2011); *and BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007) ("A party cannot avoid infringement . . . simply by contracting out steps of a patented process to another entity . . . the party in control would be liable for direct infringement").

**B.     FACTS**

FCStone's motion contends that it "does not own, operate, or maintain any host servers, including the host server operating [fcstone.com]" and that FCStone does not "communicate or interact with customers through that website." Motion at 3-4, Ex. A to Motion at ¶12-13.

First, a cursory examination of both fcstone.com and intlfcstone.com[1] show that the sites are registered to INTL FCstone, Inc. *See* Ex. A. Specifically, fcstone.com is registered to INTL FCstone, Inc. at its West Des Moines, Iowa office where its head of IT Software Development and head of IT Infrastructure are located. *See* Ex. B.

Second, the websites carries an FCStone registered trademark, and bears a notice of copyright ownership by FCStone. *See* Ex. C.

Third, FCStone's website provides a map showing the areas where FCStone conducts business. *See* Ex. D. According to its own map, the State of Texas (highlighted in blue) is within the geography of FCStone's "Where we do business." Furthermore, FCstone's registration page lists Texas as one state which registered customers may select. *See* Ex. E.

---

[1] The website http://www.fcstone.com redirects a user to http://www.intlfcstone.com. However, by clicking the link for "login" at the top right corner of the www.intlfcstone.com homepage, a user is redirected to the webpage https://secure.fcstone.com.

3

Finally, among other things, FCStone's website offers its customers an active service called QST FCStone which is described as "a futures trading application that combines comprehensive, fast and flexible: order entry/order management; real-time quotes; and more." *See* Exs. F-G.

### C. TQP SATISFIES A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION.

At this stage in the litigation, TQP need only make a prima facia showing that FCStone is subject to personal jurisdiction in Texas.  *Geotag*, 2011 U.S. Dist. LEXIS 104901 at *10.  As discussed in detail below, the FCStone website satisfies the active website test and solicits business from Texas residents.  The website information and markings also demonstrate that FCStone owns, operates, or causes to be operated fcstone.com and intlfcstone.com.  *See* Exs. A-F.

#### 1. The Websites are Active and in the Very Least Interactive.

Unlike a passive website which merely allows the owner to post information for viewing, the FCStone website requires its customers to submit information to create a username and password on the FCStone website as well as creating an online futures and options account.  *See* Exs. E and G; *see Revell*, 317 F.3d at 470 (a site that "allows for bilateral information exchange with its visitors by requesting detailed customer information for an account setup" is interactive).  Furthermore the QST FCStone service allows customers to <u>send</u> "order entry/order management" requests and <u>receive</u> "real-time quotes."  Ex. F.  These capabilities, demonstrate that the website is active, and in the very least interactive.  *Revell*, 317 F.3d at 472.

#### 2. FCStone Owns the Accused Website and at the Least Directs and Conrtols Content and Information delivered Through the Website.

Assuming arguendo that FCStone does not physically "own, operate, or maintain any host servers," FCStone directs and controls the operations of the fcstone.com and intlfcstone.com websites.  FCStone's own websites show that they are operated in FCStone's name, for FCStone customers, and for FCStone's benefit.  *See* Exs. A-F.

As such, any operator of the host servers for FCStone's active website operates the servers on FCStone's behalf, as FCStone directs and controls the content and information of the website. *See Clear with Computers, LLC v. Hyundai Motor Am.*, No. 6:09-CV-479, 2011 U.S. Dist. LEXIS 65315, at *10-14 (E.D. Tex. June 14, 2011); *and BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007) ("A party cannot avoid infringement . . . simply by contracting out steps of a patented process to another entity . . . the party in control would be liable for direct infringement").

### D. CONCLUSION

TQP has made a prima facie showing of personal jurisdiction through the ownership or control of the interactive website secure.fcstone.com. The website openly solicits business and touts doing business within the forum state. The website is active through its customer interaction, customer login and the sending and receiving of trade data. Despite FCStone's claim that it does not own or operate the host servers for the website, FCStone is the registrant of the website and claims all copyrights and content to the website. Therefore, any entity which physically owns, operates, or maintains host servers for the website does so for the benefit of FCStone under its direction and control and FCStone should be deemed to be subject to personal jurisdiction in this State. For at least these reasons, FCStone's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) should be denied.

If the Court does not outright deny the motion outright, it should grant TQP the opportunity to obtain discovery on the facts surrounding jurisdiction.

## II. FCSTONE'S RULE 12(B)(6) MOTION SHOULD BE DENIED.

FCStone misrepresents the allegations in TQP's complaint and makes unsubstantiated factual assertions to prematurely present to the court the artificially-narrow question of whether it directs or controls the exchange of encrypted data between the servers hosting its website and customer computers that are used to access the servers. Specifically, FCStone contends: (1) that TQP does not claim that FCStone practices every step of the claimed method; and (2) that it is "incapable of completing" every step of the claimed method "by force of logic." Motion at 4-5.

Contrary to FCStone's contentions, TQP's complaint specifically alleges that an infringing communications link is established "when FCStone …connect[s] to FCStone's website," *see* Complaint ¶28, and the "force of logic" does not establish that FCStone computers have never been used to exchange encrypted data with the servers hosting FCStone's websites. It is highly unlikely that FCStone computers have never been used to access an FCStone website, at least for testing purposes, and FCStone's motion should be denied on this basis alone.

Moreover, TQP's allegations have already been found to be sufficient on the artificially narrow question that FCStone presents to the court. *See TQP Dev., LLC v. Ticketmaster Entm't, Inc.*, Case No. 09-cv-279 (E.D. Tex. Apr. 29, 2010) (Dkt No. 160) at 2 (attached as Exhibit H) (TQP "specifically alleged facts to demonstrate that Defendants exercised sufficient direction or control over any steps performed by a third party."). FCStone's motion essentially makes the same arguments based on the same cases as the motion to dismiss filed in *Ticketmaster,* and the outcome in this case should be no different, especially since the legal standard for joint infringement is under review by the Federal Circuit, as FCStone's motion concedes. It would be improper to find that no set of facts can exist to establish direction or control as a matter of law, as urged by FCStone, when the legal standard itself is in flux.

A.  **TQP's Complaint Satisfies the Pleading Requirements for a Patent Case.**

When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the stated grounds for relief must be "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S.

6

at 570). Determining whether a claim to relief is "plausible on its face" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

The Supreme Court's decisions in *Twombly* and *Iqbal* did not drastically change the pleading requirements of Rule 8(a) in patent infringement cases, because Form 18 does not require extensive factual pleading. *See McZeal v. Sprint Nextel Corp*., 501 F.3d 1354, 1357 (Fed. Cir. 2007). Form 18 generally requires the following elements: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by making, selling, and using the accused product embodying the patent; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages. *See* Fed. R. Civ. P. Form 18 (2011). "A patent complaint that complies with Form 18 will suffice to state a claim that is plausible on its face." *Bluestone Innovations Tex.. L.L.C. v. Formosa Epitaxy Inc*., 2011 U.S. Dist. LEXIS 117746 (E.D. Tex. Sept. 12, 2011). "To hold otherwise would render Rule 84 and Form 18 invalid." *Id*.

TQP's complaint contains all the elements required by Form 18 and satisfies the pleading requirements for a patent case. It provides notice of infringement under 35 U.S.C. §287 and contains allegations of jurisdiction, patent ownership, and a demand for an injunction and damages. Complaint ¶¶ 1, 7, 19-22, 40-43. It also explains in detail how FCStone has been infringing the '730 patent. For example, TQP alleges that it is the communication link running the encryption protocol between the host servers and the client computers (which can be either FCStone computers or the computers of FCStone's customers) that are accused of infringement:

- "[W]hen FCStone and/or FCStone's customers connect to FCStone's website, a communication link is established between host servers and the client computer."
- "In order to communicate with encrypted portions of FCStone's website, client computers must agree to an encryption algorithm or protocol."
- "Once that protocol is established by the host server, the client computer automatically implements the claimed encryption under the direction of the host server."

7

- "By virtue of performing each step of the claimed method, Defendant FCStone is directly infringing the '730 [p]atent."
- "[B]y virtue of performing some steps and directing and/or controlling others to perform the remaining steps, Defendant FCStone is directly infringing, literally infringing, and/or infringing the '730 [p]atent under the doctrine of equivalents."

Complaint ¶28. TQP also alleges facts to support the statement that "the client computer automatically implements the claimed encryption under the direction of the host server."

- "FCStone provides, or directs the client computer to provide, a seed value for both the transmitter and receiver in a symmetric encryption algorithm, and uses the same key to encrypt and decrypt the data."
- "FCStone generates, or directs the client computer to generate, a first sequence of pseudo-random key values....based on said seed value at the transmitter (whichever of the host server or client computer is sending the encrypted information), each new key value in said sequence being produced at a time dependent upon a predetermined characteristic of the data being transmitted over said link."
- "FCStone encrypts data for transmission from the host server to the client."
- "In addition, FCStone directs the client computer to encrypt data comprising information sent from the client to the host server before it is transmitted over the link."
- "FCStone generates, or directs the client computer to generate, a second sequence of pseudo-random key values…based on said seed value at said transmitter, each new key value in said sequence being produced at a time dependent upon a predetermined characteristic of the data being transmitted over said link such that said first and second are identical to one another, as is used in a symmetric algorithm, a new one of said key values in said first and second sequences being produced each time a predetermined number of said blocks are transmitted over said link."
- "FCStone decrypts data sent from the client in order to use the data, and directs the client computer to decrypt data transmitted from the host server in order to provide a useable display…"

8

Complaint ¶28.  Hence, TQP's complaint "contains enough detail to allow" FCStone to answer and "meets the notice pleading required to survive a Rule 12(b)(6) motion." *See McZeal* at 1357.

  **B.**  **FCStone Uses Hypothetical Facts to Seek Judicial Determination on an Artificially Narrow Issue.**

  FCStone's contention that TQP's complaint "ultimately admits" that FCStone "does not perform each and every step of the method claimed" by the '730 patent is a misrepresentation of TQP's infringement allegations.  Motion at 4.  For example, TQP's complaint specifically alleges that an infringing communications link is established "when FCStone …connect[s] to FCStone's website."  *See* Complaint ¶28.  FCStone also makes the unsubstantiated factual claim that it "is incapable of completing each and every step of the '730 patent method claim" because it cannot "be both the 'transmitter and the 'receiver' for any particular transmission" by "force of logic."  *See* Motion at 4-5.  Yet, the "force of logic" does not establish that FCStone computers have never been used to exchange encrypted data with the servers hosting the FCStone website using the encryption protocols that are at issue in this case.  It defies belief that FCStone has never tested the encryption protocols implemented on its websites.  FCStone should be required to substantiate its tenuous claim that it has never performed each and every step of the method claimed by the '730 patent.

  FCStone's motion is a transparent attempt to frame the joint infringement issue in a favorable way based on assumed hypothetical facts.  For example, FCStone's Rule 12(b)(2) motion indicates that its websites are being hosted by different legal entities—without actually naming the legal entity that own and operate the servers.  Motion at 3 ("FCStone does not own, operate, or maintain any host servers…").  FCStone's Rule 12(b)(6) motion never mentions the fact that its websites are being hosted remotely, and FCStone's joint infringement arguments do not address the scenario of an FCStone computer being used to access the remote servers hosting FCStone's websites.  *See* Motion at 6-7.  The reason for this is simple, the company hosting FCStone's website would be its agent for infringement purposes and FCStone would be liable for direct infringement.  *See Clear with Computers, LLC v. Hyundai Motor Am.*, No. 6:09-CV-479,

2011 U.S. Dist. LEXIS 65315, at *10-14; *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 ("A party cannot avoid infringement . . . simply by contracting out steps of a patented process to another entity . . . the party in control would be liable for direct infringement").

Based on TQP's discovery in related cases, it is entirely possible for companies to have web-based applications that implement the encryption protocols that are at issue in this case for communicating confidential information within the company and/or with their agents. The fact that FCStone's web servers are being hosted by other legal entities only makes it more likely that similar web-based applications are being used to access the confidential information intended for FCStone that comes into these third-party host servers. Discovery is needed to flesh out who is hosting the FCStone websites and all of FCStone's uses of the accused encryption protocols. Certainly no conclusion on these issues can be reached by "force of logic" alone.

    **C.    TQP's Allegations Have Already Been Found to be Sufficient on the Artificially Narrow Joint Infringement Issue Raised by FCStone.**

The artificially narrow issue at the heart of FCStone's motion is its contention that TQP "cannot plausibly allege" that "FCStone controls its customers as a basis for any joint infringement theory." Motion at 6. This is essentially the same argument made by the defendants in *Ticketmaster*: "Defendants argue that customers/end-users do not maintain the required legal relationship with Defendants that would cause them to be liable for patent based on any contributory, joint infringement, or inducement theory." *See Ticketmaster,* Case No. 09-cv-279 (Dkt. No. 160) (attached as Exhibit H) at 2. The *Ticketmaster* court rejected these arguments:

> The Court rejects Defendants' arguments. The Court finds that TQP specifically alleged facts to demonstrate that Defendants themselves performed the required steps of the '730 patent. The Court also finds that TQP specifically alleged facts to demonstrate that Defendants exercised sufficient direction or control over any steps performed by a third part. The Court finds that TQP's allegations are more than labels and conclusions and demonstrate facts, that, if proven, entitle TQP to prevail.

10

*Id.*

The outcome in this case should be no different. TQP's infringement allegations in this case are similar to the infringement allegations that TQP asserted in *Ticketmaster*. *Compare* Complaint (Dkt No. 1) *with* Case No. 09-cv-279 (Dkt No. 1) (excerpts attached as Exhibit I). FCStone relies on the same basic case authorities that the defendants relied on in *Ticketmaster*. *Compare* Motion at 6-7 *with* Case No. 09-cv-279 (Dkt No. 115) at 13-16.[2] The main difference, however, is that the legal standard for joint infringement is now under review by the Federal Circuit. Motion at n.5. It would be improper to find that no set of facts could establish direction or control as a matter or law, as urged by FCStone, when the legal standard itself is under review.

### D. Conclusion

FCStone's Rule 12(b)(6) motion should be denied because FCStone should be required to substantiate its factual assertion that it has never completed every step of the method claimed by the '730 patent. Moreover, TQP's joint infringement allegations have already been found to be sufficient to satisfy the pleading requirements in a patent case, and it would be improper to find that no set of facts could establish direction or control when the legal standard itself is under review. Accordingly, FCStone's Rule 12(b)(6) motion should be denied.

---

[2] *Golden Hour Data Sys. v. emsCharts, Inc.*, 614 F.3d 1367, 1380 (Fed. Cir. 2010) was not cited by the *Ticketmaster* defendants, but this case is purported by FCStone to be consistent with the *BMC Resources* line of cases that were before the court in *Ticketmaster*.

Dated: February 1, 2012

Respectfully Submitted,

By: /s/ *Adam S. Hoffman*
    Adam S. Hoffman, CA SB #218740
    E-mail: ahoffman@raklaw.com
    RUSS, AUGUST & KABAT
    12424 Wilshire Boulevard 12th Floor
    Los Angeles, California 90025
    Telephone: 310/826-7474
    Facsimile:  310/826-6991

    Attorney for Plaintiff,
    **TQP DEVELOPMENT, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on February 1, 2012, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ *Adam S. Hoffman*
Adam S. Hoffman